## Estate of Anderson.

*January 15—February 12, 1924.*

*Executors and administrators: Claims against decedents: Son claiming under contract of father to compensate for services: Gift to son: Discharge of contract: Evidence: Sufficiency.*

The evidence in support of a claim in the amount of $2,250 filed by a son against the estate of his father showed that the claimant son had worked without compensation on the father's farm for fifteen years; that the father in 1916 executed a will wherein property of the value of $18,000 was left to the son; that contemporaneously with the execution of the will a writing had been signed by both father and son which provided that if the son, for any reason, did not take under the will there should be paid him compensation at the rate of $150 a year from the time he was twenty-one years of age until he quit the father's employment; that in 1921 the father sold the farm, made advances in money to his children, including a $5,000 gift to claimant; and that shortly before he died he made a new will which contained no provision for the claimant. *Held,* that a finding of the court that the payment of $5,000 to claimant was intended to discharge the contract of 1916 is against the great weight and clear preponderance of the evidence. p. 623.

APPEAL from a judgment of the county court of Shawano county: F. A. JAECKEL, Judge. *Reversed.*

The plaintiff was a son of Paul Anderson and had lived with his parents after reaching his majority and worked for fifteen years for his father without compensation, contributing his earnings upon the father's farm and elsewhere to the family fund. The father died October 9, 1921, leaving surviving a widow, sixty-four years of age, and eight adult children. There were four boys and four girls. The girls married, three of them between the ages of sixteen and eighteen, and the fourth one at the age of twenty-four. Dave, the oldest son, about forty-one years of age, left home shortly after he became twenty-one, Alvin is about thirty years of age, and Paul, the youngest, twenty-six years of age. They also left home, but at times when they were at home helped do the work on the farm. The claimant, *Mark*, is about thirty-seven years of age. He remained at home until the farm was sold to Alvin and Paul in April, 1921. The farm consisted of 240 acres of land, of which about 140 was cleared and under cultivation. A large amount of stock was kept upon the farm and a dairy was operated there. There is no evidence of any trouble between the father and *Mark*. In 1916 the father made a will. The will was prepared by a lawyer, and at the same time the father and *Mark* executed the following agreement:

"It is hereby agreed by and between Paul Anderson, party of the first part, and *Mark Anderson*, party of the second part:

"It is admitted by both of the parties to this agreement that *Mark Anderson* has worked for his father, Paul Anderson, from the time he was able to work up to the present time, being for a period of over ten years since said *Mark* was twenty-one years of age, and that he has received no compensation for such work, except his board and clothing, and in order to do justice it is agreed that if the provisions made in this will for *Mark Anderson* should be defeated, then in that case *Mark Anderson* shall receive from the estate of party of the first part for work and services rendered one hundred fifty dollars ($150) a year from the time he was

twenty-one years of age until such time as he might quit the employ of the party of the first part.

"This agreement shall be void and of no effect if my son *Mark Anderson* takes under the will.

"Dated this —— day of February, 1916.

"PAUL ANDERSON.
"MARK ANDERSON."

Subsequently and in 1921 the father as stated sold his farm to Alvin and Paul. The farm was valued at $25,000. They gave back a mortgage for $13,000, and the difference was considered in the nature of a gift or advancement. The girls had received some money, amounting from $600 to $1,000 each, from time to time. Dave had been given $4,400. The will executed by the father contemporaneously with the making of the agreement left to *Mark Anderson* property of the value of $18,000. At the time of the making of the 1916 will the deceased was enjoying good health and it was not made in expectation of his death, and it appears to have been freely and voluntarily made. Three days before his death he executed a second will, revoking the first and giving to his son Alvin a house and lot, to his widow all of the remainder of his estate for and during her natural life, and the remainder over to the four daughters. *Mark* filed the contract of February, 1916, as a claim against the estate of his father, and it is undisputed that if it is a valid claim he is entitled to recover the sum of $2,250 from the estate.

At the time of the sale of the farm to Alvin and Paul the father left $5,000 in the bank with directions to the cashier to pay it to *Mark*. The controversy is whether or not this was a payment of the obligation of the father to *Mark* under the contract of February, 1916, or whether it was in the nature of a gift and should not be applied so as to discharge the claim under the contract of February, 1916. The county court was of the opinion that it was such payment and disallowed the claim, and from the disallowance of the claim plaintiff appeals to this court.

Estate of Anderson, 182 Wis. 618.

For the appellant there was a brief by *Andrews & Brunner* of Shawano, and oral argument by *A. M. Andrews.*

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

ROSENBERRY, J.   The trial court based its conclusion to the effect that the payment of $5,000 discharged the contract of February, 1916, upon the case of *Heber v. Estate of Heber,* 139 Wis. 472, 121 N. W. 328.   In that case it is said:

"In the absence of a contract whereby a decedent agreed to pay his son for his services, a conveyance of land by the father to the son would be considered a gift; but the existence of a contract, together with the fact that at the time of the conveyance the decedent was largely in debt for such services, and the absence of evidence of payments otherwise made on such indebtedness, furnishes evidence sufficient to support a finding offsetting the value of the land against the son's services."

We are not disposed to disturb the rule of the *Heber Case,* but we are of the opinion that it does not apply to the facts in this case.   In that case it appears that the son had worked for the father for seventeen years; that about three years before the death of the father he and his wife conveyed to the son forty acres of land which was of the fair value of $2,200; that after the death of the decedent the son appropriated money, sold grain, and appropriated other assets to his own use; and it was held that the value of the farm and the assets appropriated should be offset against the son's claim for services.   The determination in that case did not rest entirely upon the mere fact that the father was indebted to the son and conveyed certain property to him.   The court said:

"Indeed, the circumstances tending to show that the father did not intend that the son should recover wages, and retain the forty-acre tract without accounting for its value, are

quite persuasive.  He had six other children, one of them a girl forty-three years of age, who was not strong in mind or body and who had always lived at home.  To her he left a legacy of $1,000.  The other children for the most part lived and worked at home until they became of age.  To each of them he bequeathed $500.  There is little doubt that the testator intended that the claimant should have all his property after the legacies bequeathed to the other children were paid.  It seems equally clear that he intended that such legacies should be paid.  The inventory value of decedent's property, plus the value of some property not included therein, was but $5,265.68.  The sum of $200 was set apart for a monument.  The amount of the bill presented against the estate by the claimant was $7,581.  The amount allowed claimant for his services and for the rental value of the forty-acre tract was $2,700.  On the basis of this allowance, which it is claimed should be at least $1,000 more, the estate would fall over $1,100 short of paying the specific legacies provided for in the will, without taking into account funeral expenses or costs of administration.  We think these facts and circumstances furnished ample warrant for the decisions of the county court and of the circuit court in making the offset."

In this case the evidence shows that *Mark,* when notified that his father had deposited $5,000 in the bank, refused to accept it, claiming that his share was greater than that.  As already stated, the deceased left an estate of $17,000.  *Mark's* claim was that the $5,000 was given to him upon the same basis as the $6,000 interest in the farm had been given to Alvin and Paul and $4,400 had been given to Dave.  After his refusal to accept that money he saw his father, and his father said to him:

"You take that $5,000, and when I die I will give you some more; I will pay you all you got coming.  Take that money and I will see to it that you get paid for your work, every bit of it, when I die.  I can't do any better now, but I will leave you some more when I die."

Evidence to the same effect was given by the cashier of the bank in which the $5,000 was deposited.  After having

been thus assured by his father, the plaintiff, two or three months after the deposit was made, accepted the $5,000. There is no evidence to contradict the testimony referred to and we think only one inference can be drawn from it, taken in connection with the surrounding circumstances, and that is that the father did not intend to apply it on his indebtedness to *Mark* for the work covered by the contract of February, 1916, and that the $5,000 was given by the father and accepted by the son as a gift. The father well knew of the contract of February, 1916. It was executed for the very purpose of securing *Mark* for services which he had performed over and above those of the other children. The will made contemporaneously with the contract was revoked, leaving the contract in full effect. This did not happen until after the payment of the $5,000. There are other circumstances which tend to support this view, but we think the facts stated are conclusive, and that a finding that the $5,000 was intended to discharge the liability under the contract of February, 1916, is against the great weight and clear preponderance of the evidence. Evidence of statements made by the deceased after the $5,000 was paid to *Mark* cannot change the contract relations existing between the deceased and *Mark*. *Mark* is not claiming under the will but under the contract. Whether or not the contract was discharged by the payment must be determined upon the facts as they existed at the time the $5,000 was accepted. Upon that point subsequent *ex parte* declarations are not material.

*By the Court.*—Judgment appealed from is reversed, and cause remanded to the county court of Shawano county with directions to allow the claim.

OWEN, J., dissents.